UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| MAY S. STILSON | **DECISION** |
| Plaintiff, | **and** |
| v. | **ORDER** |
| ANDREW M. SAUL,[1] Commissioner of | **18-CV-01118F** |
| Social Security, | (**consent**) |
| Defendant. | |

_____

APPEARANCES:            LAW OFFICES OF KENNETH R. HILLER, PLLC
                        Attorneys for Plaintiff
                        KENNETH R. HILLER, and
                        JUSTIN DAVID JONES, of Counsel
                        6000 North Bailey Avenue
                        Suite 1A
                        Amherst, New York  14226

                        JAMES P. KENNEDY
                        UNITED STATES ATTORNEY
                        Attorney for Defendant
                        Federal Centre
                        138 Delaware Avenue
                        Buffalo, New York  14202, and

                        AVNI DINESH GANDHI
                        Special Assistant United States Attorney, of Counsel
                        United States Attorney's Office
                        c/o Social Security Administration
                        Office of General Counsel
                        61 Forsyth Street, S.W.
                        Suite 20T45
                        Atlanta, Georgia 30303

---

[1] Andrew M. Saul became Commissioner of the Social Security Administration on June 17, 2019, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On October 7, 2019, the parties to this action, in accordance with a Standing Order, consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned. (Dkt. No. 14). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on May 30, 2019 (Dkt. No. 9), and by Defendant on July 26, 2019 (Dkt. No. 10).

## BACKGROUND

Plaintiff May Stilson ("Plaintiff" or "Stilson"), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications for social security disability benefits and supplemental security income filed with the Social Security Administration ("SSA"), on June 14, 2016. (R. 145-47). In applying for disability benefits, Plaintiff alleges she became disabled on June 1, 2016, based on primary mediastinal superior vena cava ("SVA") large B cell non-Hodgkin's lymphoma (together "cancer"), anemia, chronic pain syndrome with neuropathy and obesity. Plaintiff's application initially was denied October 26, 2016 (R. 71), and on January 6, 2017, Plaintiff requested an administrative hearing before an administrative law judge ("ALJ"), which was held on April 3, 2017, before ALJ Lynette Gohr in Falls Church, Virginia, with Plaintiff, represented by Clyde Call, Esq., appearing and testifying via videoconference in Buffalo, New York. (R. 27-71). Vocational expert Lanell Hall ("the V.E.") gave testimony by telephone. *Id.*

On October 19, 2017, the ALJ issued a decision denying Plaintiff's claim, (R. 10-20), which Plaintiff appealed to the Appeals Council.  On August 17, 2018, the Appeals Council denied the request for review, rendering the ALJ's decision the Commissioner's final decision.  (R. 1-4).  On October 12, 2018, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision.

On May 30, 2019, Plaintiff filed a motion for judgment on the pleadings (Dkt. No. 9) ("Plaintiffs' Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. 9-1) ("Plaintiff's Memorandum").  On July 26, 2019, Defendant filed a motion for judgment on the pleadings (Dkt. No. 10) ("Defendant's Motion"), attaching the Commissioner's Brief in Support of the Commissioner's Motion for Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Civil Rule 5.5 (Dkt. No. 10-1) ("Defendant's Memorandum").  On August 14, 2019, Plaintiff filed Plaintiff's Reply to Defendant's Brief in Support of the Defendant's Motion for Judgment on the Pleadings (Dkt. No. 11) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is GRANTED; Defendant's Motion is DENIED.  The case is REMANDED for further proceedings.

## **FACTS**[2]

Plaintiff May Stilson ("Plaintiff" or "Stilson"), born on May 31, 1978, lives alone, has three teenage children who live under the care of Plaintiff's mother, is a high school graduate having attended regular classes, and completed vocational training in

---

[2] In the interest of judicial economy recitation of the Facts is limited to only those facts necessary for judgment on the pleadings.

3

phlebotomy. (R. 34). Plaintiff has past relevant work experience as a waitress, order taker, home attendant, and customer service representative. (R. 18).

On June 9, 2016, Plaintiff sought treatment from Buffalo General Hospital Medical Center ("BGMC"), emergency room for chest pain and edema (swelling) of Plaintiff's face and right arm. A computerized tomography ("CT") scan revealed an anterior mediastinal mass later biopsied and diagnosed as primary mediastinal SVC large B cell non-Hodgkin's lymphoma.[3] (R. 432-40). Upon Plaintiff's discharge on June 17, 2016, Plaintiff was referred to CCS Oncology ("CCS"), for cancer treatment. *Id.* Plaintiff returned to BGMC on June 22, 2016, for increased edema and pain, and discharged on June 22, 2016, to Millard Suburban Hospital ("Millard"), for chemotherapy treatment under the supervision of Oncologist Naheed Alam, M.D. ("Dr. Alam"). (R. 268). Upon undergoing five rounds of radiation therapy, Plaintiff was administered CHOP[4] chemotherapy on June 25, 2016, July 11, 2016, and July 18, 2016. (R. 898).

On July 13, 2016, Plaintiff was admitted to BGMC for difficulty breathing and chest pain, where a CT scan revealed Plaintiff was diagnosed with a moderate effusion of Plaintiff's left lung later removed via thoracentesis.[5] (R. 834-35).

On July 27, 2016, Plaintiff returned to the BGMC emergency room with chest pain and heart palpitations. A CT scan revealed a large left pleural effusion later removed using thoracentesis. (R. 510, 577, 563-64).

---

[3] Lymphoma is a form of cancer that begins in the lymph system, a part of the immune system that helps to fight infection and disease. Primary mediastinal diffuse SVC large B-cell non-Hodgkin's lymphoma, often found in younger women, involves a cancerous mass behind the breastbone that presses on the windpipe of the vena cava (large vein leading from the heart), resulting in swelling of an individual's arms and face.
[4] CHOP is an acronym for a chemotherapy regimen composed of four different drugs. *Stedman's Medical Dictionary* 370 (28th ed. 2006).
[5] Thoracentesis is a procedure wherein a needle is inserted into the space between an individual's lungs to remove unwanted fluid.

On August 6, 2016, Plaintiff was transferred to BGMC for shortness of breath ("SOB"), chest pain, and back pain, where on August 8, 2016, Plaintiff was diagnosed with recurring pleural effusion, and a lung catheter was installed. (R. 894).

On August 27, 2016, Plaintiff returned to WCA Hospital in Jamestown, New York, with chest pain, where a chest X-ray revealed a pleural effusion that was subsequently drained. (R. 1066-70).

On August 29, 2016, Raman Sood, M.D. ("Dr. Sood"), an oncologist with CCS, noted that Plaintiff's remaining CHOP treatments had been postponed as Plaintiff had been hospitalized on multiple occasions for left-sided pleural effusions since starting Plaintiff's CHOP therapy and that diagnosed with deep vein thrombosis ("DVT") during her treatment. (R. 1122). Dr. Sood ordered eight additional cycles of Rituximab[6] plus CHOP which Plaintiff started on September 6, 2016. (R. 1123).

On August 31, 2016, Mumtaz R. Karmi, M.D. ("Dr. Karmi"), completed a physical examination of Plaintiff who reported SOB, and noted that Plaintiff appeared sickly. (R. 1419).

On September 7, 2016, Joe I. Askar, M.D. ("Dr. Askar"), drained Plaintiff's left lung. (R. 1118).

On September 8, 2016, Plaintiff was admitted to BGMC for a pericardial effusion,[7] where Plaintiff later underwent pericardial[8] window heart surgery. Plaintiff

---

[6] Rituxan (also called Rituximab) is "in a class of medications called biologic antineoplastic [acting to prevent, inhibit, or halt the development of a tumor] agents." *Rituximab injection*, PubMed Health (March 1, 2010), http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000388.
[7] The pericardium is a fluid-filled sac that surrounds the heart.
[8] Pericardial window surgery is a procedure to remove a small part of the pericardial sac to allow for the draining of excess fluid.

5

was discharged on September 12, 2016, with orders for a bi-weekly visiting nurse to drain Plaintiff's lung catheters. (R. 1136, 1192).

On September 22, 2016, an echocardiogram ("EKG"), revealed abnormal ejection fraction with a small pericardial effusion. (R. 1414).

On September 28, 2016, Francisco Hernandez, M.D. ("Dr. Hernandez"), an oncologist at Roswell Park Cancer Institute ("Roswell"), reviewed Plaintiff's entire medical record, and, upon completing an initial consultative physical examination of Plaintiff, noted that Plaintiff underwent four courses of R-CHOP and radiation therapy, had multiple vessel anatomic obstruction-related complications including left-sided pleural effusions with multiple thoracenteses, insertion of a pleural catheter, pericardial window surgery, and ordered a PET/CT scan. (R. 1242-51).

On October 3, 2016, Plaintiff was admitted to Roswell, where, upon reviewing Plaintiff's PET/CT scan, Dr. Hernandez recommended Plaintiff undergo two additional cycles of DA-EPOCH-R.[9] (R. 1263).

On October 5, 2016, Physical Therapist Melissa Hermann ("P.T. Hermann"), completed a rehabilitation assessment of Plaintiff to evaluate Plaintiff's safety, strength and mobility before discharge, reviewed Plaintiff's medical records, noted that Plaintiff reported that Plaintiff was so weak before her admission to Roswell that she used a wheelchair and rolling walker to walk short distances, and a hospital bed to reduce her propensity to pleural effusion, evaluated Plaintiff with the ability to transfer from a sitting position on her bed to two-wheeled walker, walk for 200 feet with a rolling walker while a therapist was pushing her IV pole, use her walker for limited distances in her room

---

[9] DA-EPOCH-R is an alternative chemotherapy to R-CHOP that includes rituximab, prednisone, vincristine, cyclophosphamide, doxorubicin, and etoposide.

independently while holding onto her IV pole, that Plaintiff's ability to stand was impaired, and noted that Plaintiff was not safe for discharge to her home environment. (R. 1266-69). On October 9, 2016, Plaintiff was cleared for discharge from Roswell with a walker. (R. 1289).

Plaintiff was admitted to BGMC with SOB, chest pain and a pleural effusion from October 12, 2016 to October 22, 2016 (R. 1471-72), to Roswell for chemotherapy from October 25, 2016 to October 30, 2016 (R. 1607), returned to Roswell for pain management and treatment on November 6, 2016 (R. 1611), and started pain management treatment with Kathleen J. Lee, M.D. ("Dr. Lee"), on December 8, 2016, where Dr. Lee noted that Plaintiff continued to experience neuropathy secondary to Plaintiff's chemotherapy that would likely continue for one year, and opined that any neuropathy that remained for one year following Plaintiff's chemotherapy would likely never subside. (R. 1700).

## DISCUSSION

**1.    Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In

7

reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id.* "Congress has instructed . . . that the factual findings of the Secretary,[10] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

**2.     Disability Determination**

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity, the inquiry ceases and the claimant is not eligible for disability benefits. *Id.* Next to be determined is whether the applicant has a severe impairment which

---

[10] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

8

significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Absent such an impairment, the applicant is not eligible for disability benefits. *Id.* Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement,[11] there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity," which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").[12] 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168

---

[11] The duration requirement mandates the impairment must last or be expected to last for at least a continuous twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

[12] "Past relevant work" or "PRW" is defined as work the claimant performed within the past 15 years as substantial gainful activity, for a sufficient period of time for the claimant to learn how to perform the work. 20 C.F.R. §§ 404.1560(b)(1), 404.1565, and 416.960(b). Whether past work qualifies as relevant is determined either as the claimant actually performed it, or as the work generally is performed in the national economy. *Id.*

F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found Plaintiff meets the Act's insured status requirement through September 30, 2016 (R. 13), did not engage in substantial gainful activity since June 1, 2016, her alleged disability onset date, suffers from the severe impairments of diffuse mediastinal SVC large B-cell non-Hodgkin's lymphoma, anemia, chronic pain syndrome with neuropathy, and obesity, but that does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in Appendix 1. (R. 13). The ALJ also found that Plaintiff retains the residual functional capacity to perform medium work work as defined under 20 C.F.R. § 404.1567(a), with additional limitations of being able to frequently reach in all directions, push and pull with the upper extremities, balance, stoop, kneel, could tolerate frequent exposure to humidity, wetness, dust, odors, fumes and pulmonary irritants, vibrations, could occasionally crouch, crawl, climb stairs, ladders, ropes, scaffolds, could never work at unprotected heights, or be exposed to dangerous machinery, areas with exposure to extreme cold or heat, or work in areas with more than moderate noise. (R. 14). Based on these limitations, the ALJ determined Plaintiff could perform Plaintiff's past relevant work as an informal waitress, order taker, home attendant, and customer service representative, but based on Plaintiff's RFC, age, education, and ability to communicate in English, that Plaintiff could perform work as a

laundry laborer, and cashier, as those jobs are classified in the Dictionary of Occupational Titles. (R. 19-20). Accordingly, the ALJ determined Plaintiff is not disabled as defined under the Act. *Id.* at 20.

In support of Plaintiff's judgment on the pleadings, Plaintiff argues the ALJ, in determining Plaintiff's RFC, erred in failing to account for all of Plaintiff's limitations, specifically, Plaintiff's need to use a walker, thus ignoring the findings of Dr. Figueroa and P.T. Hermann on Plaintiff's functional limitations and required use of a walker. Plaintiff's Memorandum at 17-20. Defendant argues that the ALJ properly evaluated Plaintiff's RFC regarding Plaintiff's alleged need for a walker, as Dr. Figueroa's finding that Plaintiff needed a walker was based on a singular examination, and that P.T. Hermann based Plaintiff's need for a walker on Plaintiff's subjective allegation. Defendant's Memorandum at 12-16. Because no challenge is raised to the first and second steps of the five-part analysis, the court does not address those steps of the ALJ's findings and proceeds to discuss the third step of the disability review process.

A claimant meets the criteria for disability under § 13.05 of the Listed Impairments if he or she has non-Hodgkin's lymphoma "requiring initiation of more than one antineoplastic treatment regimen within a consecutive 12-month period." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 13.05 ("§ 13.05"). According to the regulations, antineoplastic therapy means surgery, irradiation, chemotherapy, hormones, immunotherapy, or bone marrow or stem cell transplantation. *Id.* at § 13.00(B)(3). When evaluating a claimant under § 13.05, ALJs are required to consider the origin of the malignancy, extent of involvement, duration, frequency, responses to therapy and

11

<u>the effects of any post-therapeutic residuals</u>. *Id.* § 13.00(B) (underlining added for emphasis).

In this case, Plaintiff was diagnosed with primary mediastinal SVC large B-cell non-Hodgkin's lymphoma, and initiated an antineoplastic treatment regimen CHOP and Rituxan within a consecutive 12-month period. (R. 432, 269). On June 25, 2016, Plaintiff's R-CHOP chemotherapy began (R. 898), with recurring irradiation cycles from June 28, 2016 to July 5, 2016. (R. 418). Plaintiff underwent additional CHOP treatments on July 11, 2016, July 18, 2016, and July 18, 2016 (R. 896-98), and was hospitalized on multiple occasions for treatment of pleural effusions with thoracentesis in order to remove large volumes of fluid from Plaintiff's lungs. (R. 510-557, 821, 828, 839-40, 929, 1017-19). On August 14, 21016, Dr. Sood suspended Plaintiff's chemotherapy to install catheters in Plaintiff's lungs to assist with draining. (R. 841).

In this case, the ALJ's mere recitation of the criteria for disability under 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 13.05 (Lymphoma), and brief discussion of Plaintiff's diabetes, does not provide the court with sufficient detail to make a finding whether the ALJ included consideration of whether Plaintiff's primary mediastinal SVC large B-cell non-Hodgkin's lymphoma, SOB, neuropathy, chronic pain syndrome, resulting episodic pleural effusions, thoracentesis procedures and pericardial window heart surgery, meets or equals any additional listed impairments singularly, or in combination with § 13.05 of the listed impairments. Accordingly, remand is necessary to afford the ALJ the opportunity to further review the record and include a discussion of whether Plaintiff's primary mediastinal SVC large B-cell non-Hodgkin's lymphoma, in combination with Plaintiff's pleural effusions, thoracentesis, pericardial window surgery, SOB, chest pain,

and neuropathy singularly, or in combination, meet or equal any listed impairments and result in Plaintiff being deemed disabled.

Relevant to Plaintiff's allegation, Plaintiff's Memorandum at 17-24, that the ALJ erred evaluating Plaintiff's RFC, as stated, at the Fourth Step of the five-step analysis, the ALJ considers the applicant's "residual functional capacity," *i.e.*, the ability to perform physical or mental work activities on a sustained basis despite limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any PRW. 20 C.F.R. §§ 404.1520(e) and 416.920(e). Disability benefits will be denied at the fourth step if the applicant remains capable of performing PRW, *id.*, as well as at the fifth step if, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). In the instant case, the ALJ found Plaintiff, despite her impairments, remained capable of a limited range of medium work and was thus able to perform Plaintiff's past work as an informal waitress, order taker, home attendant and customer service representative. (R. 14-15). Insofar as Plaintiff maintains the ALJ erred in rejecting medical opinions in the record regarding Plaintiff's need to use a walker as an assistive device, Plaintiff's Memorandum at 17-24, a plain reading of the record establishes that substantial evidence supports P.T. Hermann and Dr. Figueroa's findings that Plaintiff required a walker.

In evaluating whether the requisite substantial evidence exists, the court must "defer to the Commissioner's resolution of conflicting evidence," *Cage v. Comm'r of*

*Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), and the Commissioner's findings of fact may be rejected "only if a reasonable factfinder would have to conclude otherwise." *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted). In the instant case, the extensive medical record, Discussion, *supra*, at 7-12, contains sufficient evidence to support that Plaintiff's SOB, neuropathy, pain syndrome, pleural effusions, thoracentesis, pericardial surgery and multiple hospitalizations would result in Plaintiff requiring the assistance of a walker for ambulation, and, moreover, there is no indication that Plaintiff's use of a walker was ever questioned by any of Plaintiff's treating or non-treating physicians.

      Accordingly, the record does not support the ALJ's determination to afford less weight to the findings of Dr. Figueroa and P.T. Hermann that Plaintiff requires a walker for safe ambulation. Plaintiff's claim on this issue is therefore supported by substantial evidence in the record and requires REMAND. Upon remand for further review of the record under step three, the ALJ should include Plaintiff's need for a walker during steps three, four and five of the disability review process, and include such limitation in the hypotheticals posed by the ALJ to the VE.

## CONCLUSION

Based on the foregoing, Plaintiff's Motion (Dkt. 9) is GRANTED; Defendant's Motion (Dkt. 10) is DENIED. The matter is REMANDED for further proceedings consistent with this DECISION and ORDER. The Clerk of Court is directed to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:     March 31st, 2020
                Buffalo, New York